ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| v. | | Case No. |
| CLINTON BATTLE | (01) | |
| DONNA GREEN | (02) | 4-20CR-157-P |
| YAJAIRA LOPEZ | (03) | |



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 17 2020
CLERK, U.S. DISTRICT COURT
By_____ Deputy

## INDICTMENT

The Grand Jury Charges:

At all times material to this Indictment:

### THE DEFENDANTS

1.   Defendant **Clinton Battle** was a physician duly licensed by the Texas Medical Board on or about August 27, 1978, under license number F1368. He was registered with the U.S. Drug Enforcement Administration ("DEA") to issue controlled substance prescriptions under registration number AB8206220. He engaged in the practice of medicine at 817 Baker Street, Fort Worth, Texas ("Fort Worth Clinic"). In 2009, **Battle** opened a second location in Arlington, located at 615 East Abram Street, Suite A, Arlington, Texas ("Arlington Clinic").

2.   Defendant **Donna Green** was an advanced practice registered nurse (nurse practitioner) who was hired in January 2016 to operate and see patients at **Battle's** Arlington Clinic. At no time relevant to the indictment was **Green** authorized to prescribe controlled substances under state or federal law.

3.  Defendant **Yajaira Lopez** was a medical assistant in **Battle's** Arlington and Fort Worth Clinics. At no time was she licensed to practice medicine, issue or fill prescriptions, or conduct physical therapy on patients.

## CONTROLLED SUBSTANCES LAWS AND REGULATIONS

4.  The Controlled Substance Act ("CSA") and its implementing regulations set forth which drugs and other substances are defined by law as "Controlled Substances." Those Controlled Substances were then assigned to one of five schedules—Schedule I, II, III, IV, or V—depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision. As relevant here:

   a.  Schedule II drugs have a currently accepted medical use with severe restrictions, as these drugs have a high potential for abuse, with use potentially leading to severe psychological or physical dependence.

   b.  Schedule III drugs have a currently accepted medical use with restrictions, as these drugs have a moderate to low potential for physical and psychological dependence. Schedule III drug abuse potential is less than Schedule I and Schedule II drugs but more than Schedule IV.

   c.  Schedule IV drugs, substances, or chemicals are defined as drugs with a lower potential for abuse than a Schedule II or III drug but which, if abused, may lead to moderate to low physical dependence or high psychological dependence.

5. Under Federal law and regulation, for a prescription of a controlled substance to be valid, it must have been issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice. As relevant here, a practitioner is defined as a physician, mid-level practitioner (such as a nurse practitioner or physician's assistant), or other registered practitioner who is authorized to prescribe controlled substances by the jurisdiction in which the practitioner is licensed to practice, and who holds a valid registration with the DEA.

6. An order purporting to be a prescription that was not issued in the usual course of professional practice is not a prescription within the meaning and intent of the CSA, and both the person who issued the purported prescription and the person who knowingly filled it are subject to the same laws that prohibit the illicit sale of drugs.

7. Federal law and regulations required that, other than several narrow exceptions not relevant here, every person who distributes or dispenses controlled substances must obtain a DEA registration.

8. In Texas, nurses are licensed under the Texas Nursing Practice Act. A nurse practitioner is only allowed to distribute prescription drug samples and sign prescription drug orders as provided by the Texas Occupations Code. To prescribe controlled substances, this Code requires a nurse practitioner to apply for and receive her own registration with the DEA. Only then may a physician delegate to a nurse practitioner the act of prescribing or ordering a drug as authorized through a prescriptive authority agreement between the physician and nurse practitioner.

## CONTROLLED SUBSTANCES

9. **Hydrocodone Hydrochloride** ("Hydrocodone"), a semi-synthetic opioid derived from codeine, is a narcotic prescribed as an analgesic to treat moderate to severe pain or as an antitussive (cough medicine), often in combination with acetaminophen or ibuprofen. It is known to have a high risk of abuse, and has been sold under various brand names, including but not limited to Vicoden, Loracet, Lortab, and Norco. Hydrocodone was listed as a Schedule III controlled substance until October 2014, when it was changed to a Schedule II controlled substance.

10. **Acetaminophen with Codeine** ("Tylenol with Codeine"), as relevant here, is a Schedule III opiate analgesic that is prescribed for the management of mild to moderate pain, where treatment with an opiate is appropriate and for which alternative treatments are inadequate. Because opiates and opioids are highly sought by drug users and people with addiction disorders, the U.S. Food and Drug Administration has warned that Tylenol with Codeine should be prescribed in the smallest appropriate quantity.

11. **Alprazolam** is a benzodiazepine, classified as a Schedule IV controlled substance used to treat anxiety and panic disorders. It is often referred to by its brand name, Xanax ("Xanax"). Drug abusers are known to combine Xanax with opioids such as Hydrocodone and Tylenol with Codeine. The Xanax label contains a warning by the FDA of an increased risk of drug-related mortality when combined with opioids.

12. **Phentermine** is chemically and pharmacologically related to amphetamine and other stimulant drugs that have been extensively abused, sometimes referred to by the brand names Adipex or Qsymia.

It is properly prescribed for short-term use (a few weeks) as part of a weight loss regime. Phentermine is listed as a Schedule IV controlled substance and is contraindicated for those with a history of drug abuse.

13.  **Tramadol** is a synthetic opioid analgesic indicated for the management of moderate to moderately severe pain, sometimes referred to by the brand name Ultram. It is listed as a Schedule IV controlled substance and should not be prescribed in any situation where opioids are inappropriate. Tramadol is known to be sought by drug abusers and people with addiction disorders.

## HEALTH CARE BENEFIT PROGRAMS

14.  The Division of Workers' Compensation ("TDI") is a division within the Texas Department of Insurance established by the Texas Legislature to administer and operate the workers' compensation system of the state under Texas Labor Code, Section 402.001.

15.  With limited exceptions, Texas employers are not required to provide workers' compensation coverage and benefits, and Texas employees are permitted to waive available workers' compensation coverage. Texas employers exercise their option to join the workers' compensation system by purchasing a policy of workers' compensation insurance. When both the employer and an individual employee are "covered" by a workers' compensation insurance policy, health care, wage loss, and other benefits are paid by the insurance carrier. TDI does not pay benefits of any kind directly to, or on behalf of, an injured worker.

Instead, workers' compensation insurers (which includes licensed insurance companies, governmental entities, certified self-insured employers, and group self-insured employers) pay Texas workers' compensation benefits.

16. TDI's role is to develop and enforce administrative rules defining the nature and amount of wage replacement, health care and other benefit payments that might be required following a workplace injury, and the processes and procedures related to when, how, and by whom and to whom these benefits are to be paid. Through stringent medical billing, payment and reporting requirements, TDI monitors the actions of employees, employers, insurance carriers and healthcare providers participating in the Texas workers' compensation systems, taking enforcement action when necessary, to ensure that the Texas Workers' Compensation Act and related administrative rules, reporting requirements, and other regulations regarding workers' compensation were implemented and followed.

## HEALTH CARE BILLING

17. Current Procedural Terminology ("CPT") is a list of descriptive terms and identifying codes for reporting medical services and procedures performed by physicians. The purpose of the terminology is to provide a uniform language that will accurately describe medical, surgical and diagnostic services and will thereby provide an effective means for reliable nationwide communication among physicians, patients and third parties.

18. Therapeutic procedures, or physical therapy, refers to a manner of effecting change through the application of clinical skills and/or services that attempt to improve function. To bill for each of the following physical therapy procedures, physicians or other qualified health care professionals (e.g., physical therapists) are required to have one-on-one patient contact, meaning the health care professional billing for the service must remain with the patient to monitor activity and ensure that the exercise or modality is performed correctly:

   a. CPT code 97032 refers to physical therapy involving electrical stimulation (manual) to one or more areas, each 15 minutes.

   b. CPT code 97110 therapeutic exercises to one or more areas are used to develop strength and endurance, range of motion and flexibility.

   c. CPT code 97124 refers to massage, including stroking, compression, and percussion.

19. A functional capacity evaluation ("FCE") is a physical performance test or measurement, with a written report, billed in fifteen-minute increments. To bill an FCE under CPT code 97750, the physician must have one-on-one patient contact, meaning the physician cannot delegate the services and must be with the patient during the entire evaluation. This code must be billed using the license number of the physician who performed the services.

## COUNT ONE
### Conspiracy to Distribute a Controlled Substance
### Violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1), (b)(1)(E) and (b)(2))

20. Paragraphs 1 through 19 of this Indictment are realleged and incorporated by reference.

21. From on or about January 2011 and continuing up to and including April 2017, in the Northern District of Texas and elsewhere, defendants **Clinton Battle** and **Donna Green** did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with each other and others known and unknown to illegally distribute and possess with intent to distribute controlled substances, namely, Hydrocodone, Tylenol with Codeine, Tramadol, Xanax, and phentermine, in violation of 21 U.S.C. § 841 as described below.

### OBJECT OF THE CONSPIRACY

22. It was the object of the conspiracy to illegally distribute controlled substances by issuing purported prescriptions outside the course of professional practice and not for a legitimate medical purpose for monetary gain.

### MANNER AND MEANS OF THE CONSPIRACY

23. It was part of the conspiracy that **Battle** would and did issue purported prescriptions for controlled substances that were issued outside the usual course of professional practice and not for a legitimate medical purpose, including Hydrocodone, Tylenol with Codeine, Tramadol, Xanax, phentermine, and other controlled substances.

24. **Battle** issued purported prescriptions for controlled substances after performing minimal or no medical examination of alleged patients. At times, he would tell office staff to issue whatever controlled substance prescription the patient wanted, using **Battle's** DEA registration number and medical credentials.

25. **Battle** also issued purported prescriptions for controlled substances for friends or family with which **Battle** did not have a physician-patient relationship.

26. It was also part of the conspiracy that **Green** would issue purported prescriptions for controlled substances, improperly using **Battle's** DEA registration, even though **Green** was not authorized to issue such prescriptions.

27. For patients without health insurance, in exchange for issuing the purported prescriptions or allowing his DEA registration to be used to order a prescription, **Battle** would and did charge patients approximately $200 for an initial office visit. On subsequent visits, **Battle** charged patients approximately $80. At times, a coconspirator would provide **Battle** with other illicit drugs in exchange for **Battle's** issuing purported prescriptions for controlled substances. **Battle** also received other remuneration in exchange for controlled substances.

28. It was further part of the conspiracy that others known and unknown would routinely call in purported prescriptions to various pharmacies for Hydrocodone, Tylenol with Codeine, Tramadol, alprazolam, phentermine, and other controlled substances—using **Battle's** DEA registration number and medical credentials—knowing that the purported prescriptions were issued outside the usual course of professional practice, were not issued for a legitimate medical purpose, and were intended to be diverted for

illicit distribution. At times, **Battle** knew this was occurring and allowed his name and medical credentials to be used to issue illegal prescriptions.

In violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1), (b)(1)(E), and (b)(2)).

## COUNT TWO
Conspiracy to Commit Mail Fraud
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 1341))

29. Paragraphs 1 through 28 of this Indictment are realleged and incorporated by reference.

30. From on or around January 2012 and continuing through on or around December 2017, in the Fort Worth Division of the Northern District of Texas and elsewhere, defendant **Clinton Battle** and **Yajaira Lopez** did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown, to commit the crime of mail fraud in violation of 18 U.S.C. § 1341.

### OBJECT OF THE CONSPIRACY

31. It was the object of the conspiracy for **Battle** and his coconspirators to unlawfully enrich themselves through the submission of fraudulent claims to workers' compensation and other health insurers for medical services that were not rendered, or that were rendered but mischaracterized and billed at a higher rate than what an insurer would pay had they known the true nature of the treatment.

### MANNER AND MEANS OF THE CONSPIRACY

32. It was a part of the conspiracy that **Battle** and his coconspirators, using the mail, commercial interstate carriers, and interstate wires, engaged in a scheme to defraud health insurers through the submission of claims for physical therapy that sometimes was not rendered at all and at other times was performed by a non-licensed person who was not authorized to conduct the procedure.

**Battle** and his coconspirators submitted claims with materially false representations that **Battle** had conducted each procedure, intending to cause the insurers to pay claims they otherwise would not have paid.

33. **Battle** and his coconspirators also submitted claims for FCEs falsely claiming that tests had taken hours to administer. In reality, **Battle** spent significantly less time conducting FCEs than he represented in his claims. **Battle** and his coconspirators did so in order to deceive and cause insurers to pay higher reimbursements than they otherwise would have paid.

34. It was also part of the conspiracy that **Battle** and his coconspirators would submit claims for office examinations that **Battle** did not conduct, again, for the purpose of causing insurers to pay claims they otherwise would have rejected.

35. In addition, **Battle**, **Lopez**, and their coconspirators would "up-code"—or bill for a higher reimbursement level than was authorized for the level of medical exam **Battle** performed.

36. In furtherance of their scheme to defraud, **Battle**, **Lopez**, and their coconspirators would transfer and use, without lawful authority, means of identification of patients, such as their names and birth dates.

### EFFECT ON THE HEALTH BENEFITS PROGRAMS

37. Beginning on or about January 1, 2012, and continuing through on or around December 2017, **Battle** and **Lopez** submitted and caused to be submitted claims via the mails and commercial interstate carriers to workers' compensation insurers totaling more than $439,000, the vast majority of which were fraudulent.

As a result of these claims, workers compensation insurers paid **Battle** more than $322,000 through the mails and commercial interstate carriers.

## OVERT ACTS

38. On or about the dates listed below, in the Northern District of Texas and elsewhere, in furtherance of the conspiracy and to effect its object, **Battle** and his coconspirators committed and caused to be committed the overt acts described below, in that they submitted materially false claims for reimbursement, claiming that **Battle** had performed the medical service when in fact, an unlicensed assistant performed the service:

| PATIENT | DATE | CLAIM / CPT CODE |
|---|---|---|
| R.P. | 6/4/2015 | Functional capacity evaluation – 97750 |
| R.P. | 6/30/2015 | Physical therapy – 97110 |
| R.P. | 7/7/2015 | Physical therapy – 97124 |

39. All of the above acts were done in violation of 18 U.S.C. § 371 (violation of 18 U.S.C. § 1341).

## **FORFEITURE NOTICE**
(21 U.S.C. § 853 and 18 U.S.C. § 982)

40.     Pursuant to 21 U.S.C. § 853, upon conviction of the Count One offense, the defendants, **Clinton Battle** and **Donna Green**, shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of the Count One offense, and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the Count One offense.

41.     Pursuant to 18 U.S.C. § 982(a)(8) upon conviction of the Count Two offense, the defendants, **Clinton Battle** and **Yajaira Lopez**, shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as a result of the Count Two offense, and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the Count Two offense.

42.     Specifically, upon conviction of the offenses alleged in Count One and/or Count Two, **Clinton Battle,** shall forfeit property including, but not limited to:

a. $26,268.00 in United States currency from Clinton Charles Battle Jr. M.D. (Asset No. 17-DEA-630701);

b. $11,980 in United States currency from Frost Bank Safe Deposit Box #91 (Asset No. 17-DEA-630702);

c. $6,085.86 in United States currency from Chase Bank account x6213, in the name of Arlington Occupational & Medical Clinic Corp. (Asset No. 17-DEA-631309);

d. $96,897.58 in United States currency from Fidelity Investments account x0827 under the name of Arlington Occupational/Med CLC, Clinton C Battle Jr. (Asset No. 18-DEA-635508);

e. $551,082.11 in United States currency from Fidelity Investments account x6201 under the name of Clinton Charles Battle Jr. (Asset No. 18-DEA-635509);

f. **The real property known as 5953 Tarpon Gardens Circle, Unit #102, Cape Coral, Florida 33914**, more specifically described as, Unit No. 102, Building 27, Lake Homes at Tarpon Gardens, a Condominium, according to the Declaration of Condominium recorded in Official Records Book 4154, Page 3910, as amended, of the Public Records of Lee County, Florida, together with all appurtenances thereto appertaining and specified in said Declaration of Condominium (Asset No. 18-DEA-635505);

g. **The real property know as 6021 Lakehurst Court, Arlington, Texas 76016**, more specifically described as, Lot 8, in Block 1, Lakehurst Estates, an addition to the City of Arlington, Tarrant County, Texas, according to the Plat thereof recorded in Cabinet A, Slide 393, of the Plat Records of Tarrant County, Texas (Asset No. 18-DEA-635506); and

h. **The real property known as 817 Baker Street, Fort Worth, Texas 76104**, more specifically described as, Lot 17 and 18, Block 61, Ryan Southeast Addition to the City of Fort Worth, Tarrant County, Texas, according to plat recorded in Volume 388, Page 7, Plat Records, Tarrant County, Texas (Asset No. 18-DEA-635507).

43. Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL.

FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

MATTHEW WEYBRECHT
Assistant United States Attorney
Texas State Bar No. 24102642
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455

Battle et al Indictment - Page 16



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

CLINTON BATTLE (01)
DONNA GREEN (02)
YAJAIRA LOPEZ (03)

INDICTMENT

21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1), (b)(1)(E) and (b)(2))
Conspiracy to Distribute a Controlled Substance
Count 1

18 U.S.C. § 371 (18 U.S.C. § 1341)
Conspiracy to Commit Mail Fraud
Count 2

21 U.S.C. § 853 and 18 U.S.C. § 982
Forfeiture Notice

A true bill rendered

FORT WORTH                                                            FOREPERSON

Filed in open court this 17th day of June, 2020.

**Warrants to Issue**

UNITED STATES MAGISTRATE JUDGE